Counsel, the next case this morning is 20-2066, Santa Fe Alliance v. City of Santa Fe. Please prepare to argue. May it please the court. I'm Teresa Kraft for the appellants. The plaintiffs alleged and expert affidavit supported that the TCA, the Telecommunications Act, specifically Section 704, denies them their constitutional rights to life, liberty, and property. Plaintiffs have suffered seizures, cancer, heart damage, loss of homes, loss of businesses from cell towers and antennas. The life-threatening injuries continue. The defendant's interpretation of Section 704, that the definition of environmental effects includes health, goes against the plain meaning of both words and, we believe, congressional intent. Defendant's implementation of 704 as preemptive of all state remedies are violations of the plaintiff's 1st, 5th, and 14th amendments. In enacting the WCAIIA and Chapter 27 as amended, in concert with Section 704, the defendants have violated the plaintiff's 1st and 14th amendment right to petition the government for redress. Additionally, WCAIIA and Chapter 27 as amended are an unconstitutional taking. The plaintiffs, in their brief to the court, have argued just that. The district court erred in ruling that plaintiffs had failed to state constitutional claims. The district court found that they had standing to bring the case, but then the district court said that they had failed to state a claim. We believe this was an error. Let me just ask you a couple of questions about standing. Didn't the district court say that you lacked standing to bring a claim alleging a violation of Section 704, but that you did have standing to bring your constitutional claims against the United States? Is that accurate? Yes, that is accurate. And the plaintiff's position is that they never asked for remedies directly from the TCA, so the standing issue was non-relevant. All right, so that's how you would distinguish the statutory claim versus the constitutional claim. You're bringing constitutional challenges against Section 704, the state statute, the WCAII, two city ordinances, and three executive proclamations. Suppose we agree with you that one or more of these provisions are unconstitutional. How do we know that the city's decisions about locating cell towers would be any different? What we know is that plaintiffs would be given opportunities to petition their councilmen, petition the state for state tort claims. They would be allowed to seek remedies. It doesn't mean that they will succeed, but they will at least be allowed to do so. Well, weren't they allowed to testify at zoning hearings anyway? In fact, they participated quite actively, didn't they? They participated, but it was always under the shadow of 704's preemptive powers and 704's prohibition on considering environmental effects and the definition that environmental effects include health. Now, the U.S. has again raised the issue of standing in their papers. However, the plaintiff's opinion is that they are not in a position to raise standing because they did not cross appeal. Let me stop you right there. Even if they don't cross appeal and even if they needed to cross appeal on this issue, which I don't think they do, we have to review our own jurisdiction irrespective of what you all do. So, you don't waive an argument that there's no standing, meaning there's no jurisdiction by not filing a cross appeal. Yes. However, the cases that the U.S. cited to dealt with jurisdiction under diversity claims and anything under that vein dealt directly with whether or not the original court or the appellate court had the jurisdiction because of diversity. Well, counsel, along the same lines, this court isn't restricted from looking at any applicable authority addressing standing, whether the government or any party has raised it. Wouldn't you agree with that? We're back to Judge McHugh's point that the court has a responsibility to determine whether it has jurisdiction.  Does it really matter which cases? I suppose if the cases were helpful, we could talk about them. But if we find something else applicable, there would be no restriction on our ability to look at those cases. Correct? Correct. Okay. So, the WCIAA is the legislation that removes all restrictions on land zoning. And the petitioner or plaintiff's position is that by removing that, they no longer have notice, knowledge, and the opportunity to participate in the process of determining whether or not cell towers or antennas should be placed, where they should be placed. And how many should be grouped together. The Chapter 27, as amended, removed any type of application necessary, which, again, removed the notice component. So, plaintiffs are in a position that they do not have an opportunity to redress this issue or file grievances because they're not given notice of when this is going to happen because of 27 as amended and WCIAA. Now, the plaintiffs have recognized that constitutionality, determining that laws are unconstitutional, is something that is to be avoided, if possible. And the authority that we've cited would give the court the opportunity to do just that in determining that environmental effects does not mean health. There's no congressional authority that supports that Congress intended environmental effects to include health. There's the FCC doesn't speak of health. Well, let me let me interrupt you there. I don't think they do and I don't think they did. I think that they've developed levels and because they were required to do so. But in a recent case that the FCC was joined in, they did a really nice circular argument and saying that we don't have to state that something is safe level. We, you know, as long as we've approved the equipment, it's safe. It doesn't matter. And honestly, this case is not about levels. The plaintiffs have not brought any claims against, you know, what could be considered a an appropriate level or an inappropriate level or an injurious level or a non injurious level. Their complaints have nothing to do with levels. Well, the argument you make, I mean, your concern is for the the health of humans who are in proximity to these towers, right? Correct. And the FCC has made a determination that there's a level at which they are safe for humans. I believe the FCC has determined that there might be a level, but plaintiffs are not arguing that. Plaintiffs are arguing that they have already sustained injuries and that with the placement of 5G small cells, the injury will become impossible to avoid. The further injury will become impossible to avoid. They will not be able to go anywhere and not be injured by this. Due to the design of 5G cells, it doesn't matter what the emission level is. It's the fact that it's there. Counsel, is your challenge here only to 5G technology or is it broader than that? The challenge is not to fight the technology. The challenge is to accept that there have been injuries and because there have been injuries, petitioners are due redressability. Well, your proceedings under 12B here, so we take the pleadings as true for the purposes of our analysis. But the ordinance on the placement of these towers relates primarily at this point to the 5G technology, doesn't it? Unless there's other applications going on in the Santa Fe area that I'm generally unaware of in terms of American cities. The proposed placement or expansion of 5G in Santa Fe does create a very big concern. However, that does not mean that this case would only provide remedies for 5G emissions or cell towers and antennas. So 704 speaks more broadly to the issue than merely 5G. Yes. Absolutely, because 704 prohibits any state or local government from considering the environmental effects when awarding whatever they're going to use to award the telecommunications facility. So we need permission to provide those antennas and towers by removing the definition of environmental effects, including health, is an issue. And I see that my time is up. I apologize if there are any more questions. I'll be happy to answer. I did have a quick question. Do you assert that the word environmental is ambiguous to the extent that you need to look at congressional history to determine whether health was included? And is there anything in the legislative history that is helpful on this point? We conclude that the plain meaning of environment and the plain meaning of health is enough for you to determine that. Congressional history, there was one point in which there was a House Commerce Committee report that was issued that talked about health. This was back in 2004, I believe, that talked about health. But it talked about health in the sense that the telecommunications would allow for people to participate in things more easily through Internet and through phone. And that they said might be beneficial to the public health, the public safety, things of that nature. At no time has Congress said environmental includes health. Thank you. Thank you. Your Honors, and may it please the Court, Jack Starcher on behalf of the United States. The three defendants here plan to divide up our 15 minutes. I'll start by taking nine minutes, followed by the city of Santa Fe with four minutes, and then the state of New Mexico with a final two minutes. Plaintiffs in this case allege that they have suffered various harms as a result of radio frequency emissions. They allege that those radio frequency emissions are produced by cell phone towers that are owned, operated, installed by third party telecommunications companies. And that the decisions about where to place and whether to place those cell phone towers were made by the city of Santa Fe. At no point in that story does the United States or Section 704 of the Telecommunications Act come into play. There's no serious... Judge Lucero, I cannot understand that argument because doesn't the precise language of 704 say that the city cannot take into consideration environmental factors in the location of the towers? That's correct. Section 704... So if a tower is going up next to one of the homes of the plaintiffs, now assuming the factual allegations of the complaint to be true under 12b again, it just seems to me that the government can't say, well, gee, the statutes play no role. The code plays no role in the location when in fact a citizen would be muted from being able to express any objection based upon environmental considerations. The placement of a tower right next to their house. So two responses to that, Your Honor. The first of which is there's no question in this case that Section 704 does not dictate or mandate the result of any cell phone siting decision in particular. So even though it removes one factor from consideration, declaring Section 704 to be unconstitutional would not necessarily result in any particular placement decision coming out a different way because it merely removes one factor from consideration. There are all sorts of reasons why a city or local government might choose to site or not site a cell phone tower in a particular location. The second response I guess I'd give to that point is that I think it's important to keep in mind the facts that have been alleged in this case. And while perhaps there might be another case in the future that presents a closer question on standing, the allegations in this case make very clear that the primary thing that is preventing plaintiffs here from expressing their views about radio frequency emissions is not Section 704 at all. But it's these ordinances that they are challenging. As plaintiffs clearly allege in their complaint, and this is at JA 12, which is from the amended complaint, they allege that the city has repealed all notice requirements and all means of public participation in decisions about where to site these cell phone towers. And so given the allegations in this case, plaintiffs have made pretty clear in fact that Section 704 is not what is preventing them from expressing their views. And I'd go further and say not only is Section 704 not preventing them from expressing their views on these topics, plaintiffs also made very clear in their amended complaint that they have in fact been expressing their views on these health topics at every opportunity. But there's the District Court, the basis on which the District Court found standing was on this theory of some constitutional injury, a chilling type injury as being the injury that is caused by Section 704 in this case. But that theory that sort of a chilling injury is enough to give plaintiffs standing here runs into first a doctrinal problem, I'd say, which is the Supreme Court's holding in Clapper pretty clearly states that mere allegations of subjective chill are not enough to establish standing to challenge some statute absent some past objective harm that has been suffered. And then I guess my second point related to that one is there is no objective evidence of any sort of harm or chill in this case. Again, looking at the allegations contained in the amended complaint, this is JA 26, paragraph 40 of the amended complaint. Plaintiffs plainly allege that they have in fact participated in every approval process and have testified to their injuries and losses at every public hearing for every proposed telecommunications ordinance and every proposed telecommunications facility in Santa Fe from 2005 until the present day. So any suggestion that there has in fact been any chilling here is sort of foreclosed by plaintiffs' own allegations. And so for all of those reasons, you know, again, putting aside whether or not there might be a future case that presents a closer question as to whether or not Section 704 is a cause or the cause or a but-for cause of some injury, this case, the facts of this case, I think, pretty clearly show that Section 704 has sort of nothing to do with — — from hearing or considering the arguments made in and of itself proof of a violation of the asserted right. In other words, it's akin to saying you can protest all you want, but we're going to place the tower wherever the utility wants it because we can't listen to your protests. You're saying that's not injury. Sorry. No, that's all right. Isn't that what you're arguing? But it seems to me from where I sit, and kind of where we stand in this business is where we sit, I guess, but from where I sit and what I hear you saying is essentially that the mere fact that the municipality can't listen to the objection or can't consider the objection is not injury. Yes, Your Honor, that's right, unless there's some additional facts to suggest that there would have been a different outcome if those concerns had been raised. Again, to focus on what plaintiff's injuries are here, you know, plaintiff's injuries in this case, they make clear, are related to specific siting decisions and radio frequency emissions emitted by specific cell phone towers. This is, you know, there's a prior litigation brought by these plaintiffs challenging these ordinances that was dismissed for lack of standing because they hadn't identified this. They didn't appeal that decision, so there's not a decision from this court, but they hadn't identified specific cell phone towers that were causing them injury. They'd merely challenged sort of the existence of the ordinance writ large, and so here I think a key aspect of plaintiff's standing must be linked to injuries caused by specific cell phone towers that are affecting their health in the ways that they allege. Well, aren't they alleging they also have an injury by not being able to speak to the issue of the environmental effects of these towers at all during the process of locating them? So two responses to that. The first is I think that runs right into sort of what was going on in Clapper, where that's a sort of chilling type injury where they're saying we don't want to speak at these sorts of hearings out of fear that things we say will eventually be used by telecommunications companies if a siting application is denied. I think their argument is a little different. I think their argument is we want to be able to argue so that it can be considered, and they won't even consider this issue. So turning, I'm just out of time here. I have to turn things over to the city, but just to respond to that last question, I think even putting aside, even if this court was defined that there was standing on that sort of theory that merely arguing that you would like, and again, I highlight that plaintiffs have made very clear in their complaint that they have in fact spoken about these issues consistently for the past 15, 20 years. So this isn't a case where they're saying that they were actually chilled. But even accepting the point that the mere fact that they would like a specific government, state or local government, to make decisions based on these health concerns was enough to get past standing. I think you still have the sovereign immunity issue, which I think is just a plain statutory text issue. And then I would just finally say that the district court, if this court were to reach the merits, the district court correctly dismissed all of these claims on the merits because there is no constitutional deficiency in the statute. And I'm over time, and I don't want to step too much on my co-defendant's time. So unless there are further questions, I'll turn things over to the city. Thank you. Marcos Martinez for the city of Santa Fe. May it please the court. The United States has articulated its position on the appellant's challenge to the Federal Telecommunications Act. In general, the specific claims against the city of Santa Fe turn in large part on whether the appellants can maintain their claim that the Telecommunications Act is unconstitutional or not. I'm belaboring. No, it cannot because of the statute, 47 U.S.C. 332. The statute clearly prohibits the city from considering the health effects of RF emissions in its zoning decisions. And does the city interpret environmental considerations under 704 to include health considerations? Yes, we do. We follow the guidance of the FCC in interpreting that term. The FCC is the agency which Congress has delegated the authority to regulate or further administer the Telecommunications Act. And so we find that guidance to be both persuasive and controlling on the city. What guidance specifically? In our brief, we cite on page 21 of the city's response brief, I note that the FCC has offered guidance for what environmental effect is. It states that state and local governments are broadly preempted from regulating the operation of personal wireless service facilities based on RF emission considerations. Thus, for example, a local government may not require a facility to comply with RF emissions or exposure limits that are stricter than those set forth in the Commission's rules. And it may not restrict how a facility authorized by the Commission may operate based on RF emissions or any other cause. We know that the Commission's plenary authority in this area has recently been upheld by the courts. Thank you. If a person comes in and says, I'd like to talk about environmental effects, is the City Council going to shut that person down? Your Honor, no, the City Council is not going to shut that person down and the City Council has not shut the appellants down in any of the cases which they've presented information. I view the 47 U.S.C. 332 as basically carving out certain subject matter jurisdiction areas for the city to regulate within. So we can regulate the zoning, we just cannot consider because Congress has pulled it out of the city's authority, has preempted the city from considering the health effects. And from the city's perspective, there's an important reason for that. The city is not an expert on RF emissions. We cannot hire and determine what a safe level of RF emissions are. And we wouldn't want to duplicate the efforts of creating a mini FCC in the city of Santa Fe and then have a different standard for our exposure in the city of Albuquerque, the city of Denver. I realize my time is up and I thank this court for an opportunity to speak. I'll stand for any questions, should you have any. Well, I have a question that is. Judge Lucero, we can't hear you. Okay, is that better? Can you hear me now? Yes. I said I have a problem which is akin to a due process consideration that would be akin in a case for a court to say, well, Mr. Witness, yes, we're going to hear you, but we're not going to pay any attention to what you say. And that clause, we're not going to pay any attention to what you say, cannot be said to be harmless. And in the context of a city saying we're going to listen to our citizens about the protest, all they want, but we're not going to pay any attention to what they say, because the law doesn't allow us to do so, cannot be said not to present an injury. I mean, the case may not have merit for 100 reasons, but that's not one of them, it seems to me, to say that people have the right to protest and to pretend that it's going to have any consequences. It's nonsense. Well, Your Honor, in response to that, I would say that that presumes that the appellants have a due process right in being able to articulate an objection to the location of a particular cell phone antenna. And I'm not, it's not clear to me under the facts played in this case that they have any such protectable interest. The due process clause... And regulations of the Santa Fe proceedings, don't the citizens have the right to appear and be heard? The code gives a list of entities that have the ability, actual standing to protest land use decisions. I don't know that these particular appellants have pled facts that establish that. With respect to the notice and the right to be heard, again, notice and right to be heard is in conjunction with a constitutionally recognized right to property, liberty, or life. And I don't know that they've established that. All right, well, we'll have to look at the pleadings and see if they do. Thank you, counsel. Anything further in this case? Do the appellants have some time remaining? Judge Lucera, I think we still haven't heard from Mr. Bell for the state. Oh, okay. I'm sorry. Thank you, Judge Matheson, for picking up for me there. It's hard to not be able to see the proceedings. Go ahead, please. Thank you, Your Honor. And if I may, I'll be brief. Neil Bell on behalf of New Mexico Attorney General Hector Balderas. And in addition to the arguments raised in the briefing, I just want to emphasize that if the court affirms dismissal of plaintiff's challenges to Section 704, it should also affirm dismissal of plaintiff's challenges to the state and local laws at issue in this case. And that's because the preemptive effect of Section 704 is really the threshold issue for all of the claims here. All of plaintiff's claims are based on their arguments about the alleged environmental effects of RF emissions. But as the district court repeatedly emphasized, Section 704 prohibits the state and the city from considering those effects when it comes to siting smaller personal wireless facilities. So, in effect, the state and local laws here are really acting as pass-throughs for the purposes of plaintiff's claims for their challenge to Section 704. So, if the court affirms the dismissal of plaintiff's challenges to Section 704, there's really nothing to litigate in terms of the state and local laws. The other thing I'd like to emphasize is plaintiffs have cited no authority to say that the state lacks the authority to provide a forum at the state level for challenging the siting of these locations generally. The state, for rational economic reasons, decided to encourage the development of wireless facilities through the passage of the WCAIIA. And to the extent that any individual property owner wants to challenge the provisions of that statute, they have the forum of approaching their legislator and asking for amendments or appearing at any legislative hearings that may come up in the future on that issue. So, at the end of the day, I think that really this appeal rises and falls with the viability of plaintiff's claims challenging Section 704. Thank you. Thank you. Thank you, counsel. Judge Bathis, is there any time remaining on the appellant's side? No, sir. Unless we've allowed the appellees to go over, if we wanted to, we could give her a couple of minutes. We should extend, if they have gone over to our questions, we should extend the same courtesy to the appellant. Are you both in agreement to grant three minutes additional time? Yes. Thank you. Thank you. You're welcome. Thank you. Yes, in relationship to the questions about how the petitioners or the appellants would be able to argue in front of whatever entity is going to approve or deny the placement of an antenna or a tower, I think this court's analysis is correct. It is akin to you bringing a witness into the court and saying, speak as much as you want, but we have our ears covered. And I think that everyone is very much aware of the FCC's preemptive powers and their willingness to make sure that everyone knows that they are considered the end-all, be-all. And there better not be a hint of discussion of environmental effects in any of the supporting papers that go up on. But that being your argument, why do we need or why do you need all these remaining parties? Why isn't this case really strictly a case about whether 704 is constitutional? And whether your claim survives under 12B-6, given that challenge? It is possible that the state and the local government or Santa Fe would not need to be added, except that they are participants in already following Section 704. So the harm that they've already done is at issue here as well. But isn't, I mean, it's focusing for a minute on your substantive due process claim. Didn't you have to name the FCC? I mean, isn't that the party that your beef is with? No, I don't think we had to name the FCC. And there is a case that was just recently decided in the Ninth Circuit, the Northern District of California, Cohen v. Apple, in which the FCC was joined by the court. And the FCC made it very clear that they were not a party to the action. And that any argument otherwise would be futile. So I think that really we're looking at the definition of environmental effects. And we're looking at the impact that that has on everything else. And my time is done. I'm so sorry. Thank you so much. I'll stand for more questions if you have them. Otherwise, I thank the court for their time and convenience. We thank counsel. Counsel are excused. The case is submitted.